# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROBERT BURNS, | ) |
| Petitioner, | ) |
| v. | ) No. 5:08-CV-06034-DGK |
| LARRY DENNEY, et. al., | ) |
| Respondent. | ) |

## ORDER

Pending before the Court is a Petition (Doc. 1) for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Petitioner Robert Burns ("Petitioner") is currently serving three consecutive 40 year sentences for two convictions for statutory sodomy and one conviction for statutory rape, to be served concurrently with two seven year sentences for first degree child molestation and two five year sentences for sexual misconduct involving a child.

The Petition is DENIED for the following reasons.

## STANDARD OF REVIEW

Federal courts not are empowered to grant a writ of habeas corpus to a petitioner in state custody unless the conviction was obtained by state court proceedings that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or…resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2009). A decision is contrary to clearly established Supreme Court law if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or…decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413

(2000). A decision unreasonably applies clearly established Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

## BACKGROUND

**A.     Factual Background**

On a petition for a writ of habeas corpus brought by a person incarcerated by a state court judgment, a federal court views the facts and evidence in the light most favorable to the state court's verdict. *Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *see also* 28 U.S.C. § 2254(e)(1) (2009) ("[A]n application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.")  The evidence adduced at trial in this case is summarized as follows.[1] Additional facts are included where relevant in the "Discussion" section of this order.

The victims in this case, Erica and Robert Burns, Jr., are a sister and brother who lived with their parents, Petitioner Robert Burns, Sr. and Marsha Burns, in Parkville, Missouri. The family had lived in the same house in Parkville from 1993 to August 1999. While they were living in this house there was an occasion[2] when Robert Jr. was called to his parents' bedroom and was told to pull down his pants. His mother then sucked on his "private," which he described as the place where his "pee" comes from. There were also occasions where he was called to his parents' bedroom and he had to watch his parents "going up and down" on each other while their clothes were off.

---

[1] The Court's factual summary draws heavily from Respondent's Brief to the Missouri Court of Appeals filed January 18, 2002 in Petitioner's direct appeal of his conviction.
[2] At the time of the trial Robert Jr. was 11 years-old. He testified on direct examination that this incident occurred a "long time ago" and that he could not remember when it occurred. On cross-examination he guessed it occurred when he was six or seven years-old. In his pretrial deposition he stated that the incident occurred maybe "a year or two ago" or maybe more than two years ago.

2

Erica was also made to participate in sexual activities with her parents. She was called to her parents' bedroom and she watched as they had sexual intercourse. Her mother showed Erica how to lick her father's "private area." Erica was then told to suck her father's penis. She had to suck her father's penis on five separate occasions. There were also occasions where Erica had her hands on her father's penis and she had to move her hand "up and down." The last sexual activity with Erica occurred in the summer of 1999.

The last sexual activity involving Robert Jr. occurred in the last week of 1999. He was called to his parents' bedroom, told to get on the bed and pull down his pants. His mother then got on top of him without any clothes and had sex with him for 10 to 20 seconds.

Two days after this Marsha Burns took the children out of school and drove to Springfield, Missouri. Once in Springfield, Marsha Burns alleged that Petitioner had abused them. The children were subsequently separately examined by a nurse. During her examination Erica disclosed that she had performed oral sex and masturbated her father on multiple occasions. Robert Jr. told the nurse that Petitioner had requested on several occasions that his mother fondle his genitals, perform oral sex on him, and have vaginal intercourse with him.

A sergeant with the Platte County Sheriff's Department spoke with Marsha Burns on September 13, 1999. Marsha Burns confessed that in late August 1999 Petitioner had her show Erica how to perform oral sex. The next day Marsha Burns had sex with Petitioner's cousin while he watched. Then Petitioner stated he wanted to watch someone else have sex with her so they brought Robert Jr. into the bedroom. She stated that after Petitioner told her that he wanted to bring Erica into the room again she took the children to a women's shelter. The sergeant asked Marsha Burns to write down her statement and she wrote a 13 page statement admitting to instructing Erica on how to perform oral sex, telling her how to try it, and watching Erica

perform oral sex on Petitioner. She admitted to getting on top of Robert Jr. while he was naked but stated that she did not put his penis inside her.

Petitioner and Marsha Burns were subsequently tried together. At trial Marsha Burns testified that after she took the children to Springfield she feared Petitioner would take the children and so she invented a story to make Mr. Burns "look as bad as [she] could make him look – so they would keep him from getting the kids." She claimed that she told Erica and Robert Jr. what to say and how to allege the sexual abuse. She claimed she also lied in the 13 page statement. At trial a licensed professional counselor testified that Marsha Burns suffered from major depression and that as a result she exhibited "very poor judgment." Petitioner also testified and denied the allegations. The jury found both guilty.

After trial a friend of Marsha Burns who lives in Springfield, Renea Comstock, came forward claiming to have exculpatory information. She claimed she had become acquainted with Marsha Burns after she moved to Springfield, and that she overheard Burns coaching the children to lie. Comstock also claims she had spoken with the children and that they told her that they were unhappy about having to tell the lies, but were doing so to support their mother. Comstock claims she did not come forward earlier because she only learned about the trial after the fact, while reading an account of it in the Kansas City Star at the public library in Springfield.

At the hearing on the new trial motion the state presented evidence from a representative of the Kansas City Star that the newspaper was not delivered to libraries in Springfield. The motion for a new trial was denied. The trial court sentenced Marsha Burns to 110 years imprisonment and Petitioner to 120 years imprisonment.

After the hearing on the new trial motion counsel learned that the representative was mistaken and that the paper was actually available at the Springfield public library as Comstock had testified. The Missouri Court of Appeals nonetheless declined to grant Petitioner a new trial.

4

**B.     Procedural History**

Petitioner was represented by F.A. "Al" White during all pre-trial and trial proceedings, the sentencing, and on Petitioner's direct appeal.[3] The trial took place from January 22 to January 25, 2001. Petitioner was sentenced March 15, 2001. The Missouri Court of Appeals affirmed the conviction in an unpublished memorandum opinion released June 11, 2002. Petitioner moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on November 18, 2002. The trial court held on hearing on the motion on January 14 and January 24, 2005. It denied the motion on April 18, 2005, and issued its mandate affirming the circuit court's denial of post-conviction relief on May 3, 2007. Petitioner timely filed the pending Petition (Doc. 1.) on April 9, 2008.[4]

## DISCUSSION

The Petition raises seven grounds for relief, none of which establish grounds for issuing the writ.

**1.     Petitioner was not denied the right to an impartial jury during voire dire.**

Petitioner contends his Fifth, Sixth, and Fourteenth Amendment right to an impartial jury and his right to conviction only upon proof beyond a reasonable doubt was violated because the prosecutor was permitted to ask perspective jurors, "Is there anyone who would demand medical or scientific evidence before they could consider a conviction?" The Missouri Court of Appeals held that the prosecutor's question was proper because he was "merely attempting to determine whether the jurors could follow the law and consider a conviction even though there was no physical evidence to substantiate the victims' claims." This determination is not contrary to, or

---

[3] Although Mr. White was counsel of record on the direct appeal, the brief was researched and completed by Charles Rogers, Cheryl Pilate, and David Kelly of Wyrsch, Hobbes and Mirakian.
[4] The Court's April 24, 2009 Order held that the Petition had been timely filed as a result of equitable tolling.

an unreasonable application of, clearly established Federal law, consequently it is entitled to deference under 28 U.S.C. § 2254 and this claim must be denied.

**2.     The denial of a new trial did not deny Petitioner due process of law.**

Petitioner argues he was denied due process of law when he was denied a new trial after presenting the newly discovered evidence from Ms. Comstock. The Missouri Court of Appeals rejected this argument, holding that Petitioner had not established that Comstock's testimony could not have been discovered before trial by the exercise of due diligence. It also found Petitioner was not entitled to a new trial because the testimony was cumulative and impeaching.

As a threshold matter a claim of actual innocence based on newly discovered evidence does not state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Petitioner however appears to argue that the state court's decision to deny the new trial motion was so egregiously bad that it rises to the level of a Due Process violation for denying him a fair trial.

The Court finds no Due Process violation or any other violation of a constitutional magnitude here. The Court has reviewed the entire record and cannot say that the Missouri Court of Appeals holding was contrary to or an unreasonable application of federal law, or resulted in a decision that was based on an unreasonable determination of the facts. Accordingly this claim is denied.

**3.     Trial counsel did not render ineffective assistance of counsel by failing to call certain witnesses at trial.**

Petitioner claims his attorney failed to render effective assistance of counsel when he failed to investigate and call as certain witnesses at trial. Petitioner argues that if called Connie Sherman, Don Smith, Rhonda Allen, Regina Jones, Shawn Callahan, Jeff Ramseier, and Kathy

6

Ramseier would have testified that they had contact with Petitioner's family, and that they did not see any abnormal family interactions. Petitioner also contends trial counsel should have called Ray Smith, the cousin who had sex with Petitioner's wife, to corroborate Marsha Burns' testimony about her reasons for leaving Petitioner and fabricating the abuse allegations to keep the children from him. Petitioner also claims counsel should have called Angela Bustamonte, Marsha Burns' sister, because she would have testified that after learning of the sexual abuse allegations she had attempted to comfort Erica, and Erica acted as if she didn't know what Bustamonte was talking about. She also could have corroborated Marsha Burns testimony that her father had sexually abused her.

To succeed on a claim of ineffective assistance of counsel, a petitioner must show (1) that "trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonable competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Armstrong*, 534 F.3d at 863 (citations omitted). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. But strategic choices made in the shadow of a lack of preparation or investigation are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

Trial counsel testified at the 29.15 hearing that he deliberately declined to call Connie Sherman, Don Smith, Rhonda Allen, Regina Jones, Shawn Callahan, Jeff Ramseier, and Kathy Ramseier because he believed that any benefit that might occur as a result of their testimony on direct examination would probably be outweighed by the damage the prosecution would inflict

7

on cross-examination. Petitioner's counsel was specifically concerned that he would be opening the door for the prosecution to ask questions like, "Did you ever see the Defendant molest his children?" and, "What if I told you that his mother had accused him of having his little girl come in and perform oral sex on him?" These were valid concerns and trial counsel's decision not to call these witnesses was a strategic choice, therefore trial counsel was not ineffective under *Strictland*.

Counsel also testified that he did not call Ray Smith because he was "somewhat of a loose cannon," and he believed he could get the information in Smith's testimony admitted through other witnesses without the risk associated with putting him on the stand. Again, this was reasonable trial strategy so there is no ineffective assistance of counsel.

With respect to Angela Bustamonte's testimony, the Missouri Court of Appeals determined that trial counsel was not ineffective because Petitioner did not show that counsel either knew or should have known of her testimony. This was a reasonable factual finding, and it is well-established that an attorney is not deficient and cannot be expected to find a witness of whom they are unaware or have no basis for knowing exists. *U.S. v. Williams*, 562 F.3d 938, 942 (8th Cir. 2009). The Court of Appeals also determined that Petitioner had not shown he was prejudiced by the failure to call her as her testimony would have been cumulative. The Court of Appeals' determinations are entitled to deference under § 2254(d), and, even if they were not, this Court would reach the same conclusion. Consequently Petitioner is not entitled to relief on these claims.

**4.   Trial counsel was not ineffective for failing to present other evidence which was known to him.**

Petitioner contends trial counsel was ineffective for failing to present evidence on three subjects. First, several years before Marsha Burns left Petitioner she accused him of molesting

8

the children. The Missouri child welfare authorities investigated this allegation but could not corroborate it. Petitioner argues this is proof that his wife had a habit of making false allegations against him, thus counsel should have placed this information in front of the jury. Second, Petitioner contends that although counsel presented the children's grade cards and argued they made good grades, he was ineffective for presenting the children's *complete* school records and showing that they consistently performed well in school. Third, Petitioner suggests counsel was ineffective for not presenting testimony at the hearing on the new trial motion that Petitioner could not have discovered Renea Comstock's knowledge prior to or during the trial because he had never met her. With respect to each of these arguments Petitioner stresses that in the absence of any physical evidence of abuse this case came down to a credibility contest, and that corroborating Marsha Burns story that she had simply made up the allegations to keep her children was crucial.

With respect to counsel's decision not to introduce the report concerning the earlier allegations of sexual abuse, the Court notes that far from exonerating the Petitioner, the report places him under a cloud of suspicion. The report concluded that the children probably had been sexually abused and was inconclusive about the Petitioner's level of involvement. Obviously, this is why trial counsel testified he would not have introduced the report into evidence "under any circumstances;" it would have hurt the Petitioner more than it helped him. Counsel's decision not to introduce the report was clearly a strategic decision made after investigation of the relevant facts and so is not a basis for granting the Petition. *Strickland*, 466 U.S. at 690.

The Court also holds trial counsel was not ineffective for presenting the children's complete school records. Counsel testified that he believed there was no need to introduce the complete records because he was able to get what he wanted from them—that Erica was a well-

adjusted, good student—without admitted the records themselves. This is not ineffective assistance of counsel.

Finally, the Court holds that Petitioner was not prejudiced by trial counsel's failure to show at the 29.15 hearing that Petitioner could not have discovered Comstock's knowledge prior to or during the trial. The Court of Appeals examined Comstock's testimony and found it was cumulative and impeaching and was therefore not grounds for a new trial under Missouri law, consequently there was no prejudice. The Court agrees with this determination.

**5.    Trial counsel was not ineffective for failing to object to the admission of certain evidence.**

Petitioner claims trial counsel was ineffective for not objecting to evidence about the Burnses' sexual practices, to the testimony of Kansas City Star representative Chris Hammontree at the 29.15 hearing, and or to the fact that jurors were allegedly sleeping during trial. These arguments are meritless.

First, trial counsel was not ineffective for making a reasonable tactical decision to deal with the couple's sexual practices up-front and defusing the potential damage before the prosecution could exploit it. As the Missouri Court of Appeals observed,

> Burns attorney testified at the evidentiary hearing that the sexual activities between Burns and his wife, although not directly related to the sexual abuse of children, "were a pretty integral part of the case" and "intertwined" with the case. He said he wanted to deal with the Burnses' sex life right up front rather than allowing the state to have a chance to exploit it to its benefit. He also said that, as a part of a joint defense with Burns' wife, they were seeking to establish thatBurns' wife fabricated all of the allegations against her husband and that thte written statement of Burns' wife was an example of that fabrication. At trial, Burns' wife testified that all the sexual practices that she claimed in her statement that her husband forced her to do actually occurred but she testified that she was a willing participant in them. Burns' attorney testified that he was trying to point to the true parts of the story versus the false parts to bolster the testimony of Burns' wife. Because counsel's

10

> decision not to object to the written statement of Burns' wife was reasonable trial strategy, Burns' contention that his trial counsel was ineffective is without merit.

This is a reasonable merits decision that is entitled to deference under § 2254(d).

Second, the state had no duty to disclose Hammontree as a witness. Although Petitioner argues Hammontree should have been disclosed as a witness prior to the hearing pursuant to Missouri Supreme Court Rule 25.03, the Missouri Court of Appeals held that Hammontree was called as a witness on the motion for new trial to rebut Comstock's testimony, thus he was a rebuttal witness not subject to Rule 25.03. Although Petitioner contends this determination is "in this context, an unreasonable determination of fact," it is not. It is a reasonable application of a state procedural rule thus there is no basis for the Court to issue a writ pursuant to § 2254(d).

Third, there is no credible evidence that any jurors were sleeping during trial. The Burnses and Ms. Bustamonte claim that they told trial counsel for Petition and for Ms. Burns that some of the jurors were sleeping during trial. At the evidentiary hearing, however, both trial counsel testified that no one told them any jurors were sleeping. Petitioner's trial counsel testified he did not remember anyone telling him some of the jurors were sleeping during trial, and that if that had happened he would have approached the bench and asked for a break. The trial court listened to this testimony and found that the Burnses allegations were not credible. In light of the evidence presented in the state court proceeding the Court cannot say this was an unreasonable determination of the facts, and this determination is entitled to deference. Accordingly, Petitioner's request for relief on this claim is denied.

### 6. Petitioner was not denied effective assistance of appellate counsel.

On this point Petitioner reiterates his earlier claim that trial counsel, who also handled his appeal, was ineffective for not presenting testimony at the hearing on the new trial motion that Petitioner could not have discovered Renea Comstock's knowledge prior to or during the trial.

Again, the Court holds that Petitioner was not prejudiced by any failure on his attorney's part because Comstock's testimony was cumulative and impeaching, and thus not grounds for a new trial under Missouri law. Consequently there was no *Strickland* prejudice and counsel was not ineffective.

**7. Petitioner was not prejudiced by the cumulative effect of any errors.**

Finally, Petition argues that even if he was not prejudiced by any one error, he was prejudiced by the cumulative effect of the above errors. As a threshold matter the Court finds no errors in the handling of Petitioner's case. But even if there were some minor errors, it is well-established law in the Eighth Circuit that "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." *Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991). Accordingly, relief on this claim is denied.

## Conclusion

For the reasons discussed above Robert Burns' Petition (Doc. 1) for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 is DENIED.

**IT IS SO ORDERED.**

Date:  April 29, 2010                     /s/ Greg Kays
                                          GREG KAYS, JUDGE
                                          UNITED STATES DISTRICT COURT